Good afternoon, Illinois Appellate Court, 1st District. Court is now in session. The 6th Division, the Honorable Justice Maureen Connors presiding, case number 1-8-2172, People v. Ralph Harris. Thank you very much, Mr. Schaffer. Good afternoon to all of you. And again, we are here on the case of People v. Harris. I'll ask the lawyers to speak up nice and loud so we can hear you during this argument. The Supreme Court rules provide that there's 20 minutes for each of you on your opening arguments and then 10 minutes for rebuttal. You certainly do not have to take all that time if you don't want to. It's certainly up to you. Let's get the lawyers who are here in Zoom court today. Let's get your names on the record. For the appellant, your name please, counsel. Justice Connors, my name is Charles Hoffman. I represent the petitioner appellant Ralph Harris in this case. Thank you, Mr. Hoffman. I ask again, when you step up, well, you're not stepping up, but when you begin to speak, mention your name again if you would, please. Certainly. Thank you, sir. And for the state? Lawrence Rosen from the Office of the Special Prosecutor here on behalf of the state. And thank you, Mr. Rosen. Again, when you speak, again, just mention your name before you begin. All right. With that, we are ready. And the we're ready. Please begin, counsel. Thank you, Justice Connors. Good afternoon to the court. Good afternoon, Mr. Rosen. My name is Charles Hoffman. I represent the petitioner appellant Ralph Harris in this post-conviction appeal. This court has heard a number of appeals involving allegations that Chicago police detectives physically abused and even tortured persons in custody at Area 2 police headquarters, a practice that remained hidden for decades. That dark chapter in our city is now commonly referred to as the Burge or Area 2 torture scandal. And the main issue in many of those appeals that this court has heard, as in this post-conviction appeal, is whether the outcome of the defendant suppression hearing likely would have been different if the detective involved had been subject to impeachment based on newly discovered evidence of abusive tactics that detective used in the interrogation of other suspects. This case, Ralph Harris's case, involves former Area 2 detective Michael McDermott, who served under disgraced and convicted commander John Bates and McDermott's then partner in 1995, detective James Boylan. As it turns out, as our newly discovered evidence showed, detective McDermott was one of the most prolific participants in the Area 2 torture scandal and probably the most impeachable of any of the Area 2 detectives involved in any case. And significantly, your honors, much of that impeaching evidence came directly from the mouth of detective McDermott himself in his immunized testimony during the federal criminal proceedings against John Burge. When McDermott testified before the federal grand jury and at Burge's trial, he admitted he watched John Burge brutally torture Shadid Miamin for the very purpose of coercing a confession. Yet McDermott did nothing to stop Burge. He failed to report Burge. And when he was later interviewed by the Chicago Police Department's Office of Professional Standards, he lied about what he saw. We also presented evidence that detective McDermott and another of his partners, detective Maslanka, savagely beat Alfonso Pinex at Area 2 before interrogating him. That beating, which is described in our evidence by Pinex in graphic detail, showed that the beating lasted for at least 10 minutes. It permanently damaged Pinex's right eye and it didn't stop until Pinex defecated in his pants and admitted to being involved in a murder. Now, at Burge's trial, McDermott only admitted that he struck Pinex in the chest and knocked him down into a chair. But significantly, McDermott also admitted in his sworn testimony in Burge's trial, that when he testified at Pinex's suppression hearing, he lied. He perjured himself by denying that he had abused Pinex at all. Why did McDermott perjure himself at Pinex's suppression hearing? In McDermott's own words, he believed Pinex was a murderer and, quote, he didn't want him to get off. Detective McDermott perjuring himself at a defendant's suppression hearing about abusing him because he didn't want the defendant to get off. What other newly discovered evidence did we present at the PC evidentiary hearing below? Well, evidence that Detective McDermott abused Tony Anderson in 1990 in the same way he abused Ralph Harris in 1995. Anderson testified at his suppression hearing that McDermott put a gun to his head and threatened to blow his brains out. Ralph Harris similarly averted in his motion to suppress that Detective McDermott put a gun to his head. Now, the trial court denied Anderson's motion to suppress back in the day. But when newly discovered evidence came out, the Illinois Torture, Inquiry, and Relief Commission upheld Anderson's complaint. They referred it for judicial proceedings. And not only did they uphold Anderson's complaint, the TURC, the Torture, Inquiry, and Relief Commission created a database of 13 other cases in which McDermott was alleged to abuse or tortured persons at Area 2 as far back as 1984 and as recently as 1999. And Ralph Harris's allegations from 1995 fall smack dab in the middle of McDermott's alleged career as a torturer at Area 2. What other evidence did we present? Well, in 2004, when McDermott was subpoenaed to testify before the special grand jury convened by Special Prosecutors Egan and Boyle, he refused to testify. Instead, he took the Fifth Amendment. And as this court well knows, that allows a negative inference against McDermott's denials of abuse against Ralph Harris in this case. And in fact, but for the statute of limitations, Special Prosecutors Egan and Boyle would have sought McDermott's indictment back then for aggravated battery, for obstruction of justice, and for perjury for the beating he and his partner inflicted on Pinex and for lying at Pinex's suppression hearing. Counsel, may I interrupt and just ask a question, please? Absolutely. Here the court was made, you're asking us to reverse the court's findings of fact. And it appears that the circuit court judge found that the facts supported McDermott's testimony that he had not physically abused the defendant. Could you address to us what facts you believe we should rely on to reverse the circuit court in making that determination? Certainly, Justice Harris. First of all, we argue in our issue one that this was a completely paper hearing below. There were no live witnesses, no live testimony. And we've cited case law holding that this court can review that and should review that de novo. Because this court is in just as good a position as the trial judge in determining the facts. But if your honors decline a de novo review and defer to the trial judge's findings, we think it was against the manifest way to the evidence. Given all of the impeaching evidence that we presented against McDermott, the reason that Judge Porter below decided that he believed there was no abuse. And again, the question here is not, as this court held in world, the question here is not whether the confession was actually coerced or whether the petitioner's to show that the outcome of the suppression hearing likely would have been different had we had all this impeaching evidence. And Judge Porter rejected our case. First of all, he found that Detective Boylan, who Mr. Harris also alleged abused him, had no his background, no history in abuse. But that really shouldn't weigh in favor of the state because of the law is not that every police officer we allege committed abuse or torture has to have a history of abuse. There's always a first time. And the fact that Detective Boylan had no documented history of abuse doesn't really take away from all the impeaching evidence from McDermott. And as this court held in Galvin, it's sufficient for a petitioner to show that any, not all, but any of the participants involved had a history of abuse. Justice Harris, if a petitioner alleges that five police officers abused him or her, I don't think there's a burden to show that all five had a history of abuse. As this court held in Galvin, if any had a history of abuse and was subject to impeachment, that's sufficient to get a new suppression hearing. And Justice Harris, if McDermott lied, that means that Boylan must have also lied. Why would Boylan lie? Well, we think the answer lies in the code of silence in the Chicago Police Department, which the U.S. Department of Justice recently found existed. And in our case, we have two glaring examples of the code of silence. We've got Detective McDermott invoking the code of silence in watching Commander Burge torture Shahid Mumin and then fail to report that. We also have the glaring example of the code of silence by Detective Eusitis, who was also present at Area 2 at the time Ralph Harris alleges he was abused, who watched Burge and others torture Andrew Wilson back in the day. And Eusitis failed to report Burge. So I think what happened was Judge Porter relied too heavily on the fact that Boylan corroborated McDermott. The other thing just Judge Porter found was that it was likely that Ralph Harris suffered the injury to his left temple, not when McDermott jammed a gun to his head at Area 2, but when there was a struggle during his arrest. But if you look at the suppression hearing, although there was a scuffle at the time of Ralph Harris's arrest, there was no testimony at all that any of the detectives placed a gun to his head, that he hit his head on a hard object, nothing like that. And because Ralph Harris did suffer that injury in custody, and we argue that even if it happened at the time of his arrest and not at Area 2, in both instances, Ralph Harris was in custody. We cited the statute on defining an arrest, an arrest when a person is in custody, and a person is in custody either at the time of arrest or when they're at the police station. And once we established that a physical injury occurred, and there's no dispute in this case that Ralph Harris had at least one physical injury, then the burden shifts to the state to provide clear and convincing evidence under the old Wilson case to show that it didn't occur in police custody. And we don't think the state presented any clear and convincing evidence. In fact, at the PC evidentiary hearing, Justice Harris, the state introduced absolutely no evidence at all impeaching or rebutting our newly discovered evidence of abuse and torture at Area 2. Does that answer your question? Yes, sir. I might note that the court seemed to dispel the injury to the side of his head. The court concluded that he had one small scratch on the side of the head, which was readily explained by taking down the defendant at the time of arrest. He described that as a small scratch. He did describe it as a small scratch. And it was variously described below as a bloody scratch or a small scratch. But Justice Harris, I think the fact that it was on his left temple corroborates Ralph Harris's allegation that it occurred when a gun was jammed to his head. And I would point out that both the Seventh Circuit and this court, the Seventh Circuit in Burge, this court in Wilson, I can't recall the name of the other case, but this court has held and the Seventh Circuit has held, it's not surprising that there aren't more evident physical injuries to persons who claim they were abused or tortured at Area 2, because it was the practice of the torturers to inflict pain and fear without leaving physical, visible remarks. That's, it's an MO of torturers, Judge. Ralph Harris alleged that he was struck in the stomach, struck in the side of the head, hit with a phone book, and a gun was jammed in his side of his head and in his mouth. Now, that's torture. And since it was designed not to leave physical signs of abuse, it's not surprising that there was only one physical injury. And even way Patterson case, Justice Harris, the Illinois Supreme Court said, there doesn't need to even be any actual physical injury. That's just one component of a case, just one factor. So I don't think that takes away from the fact that we believe we met our burden to establish by a preponderance that given all of this impeaching evidence of Detective McDermott, the outcome of his suppression hearing back in 1998, where there was no evidence of the Area 2 torture scandal admitted, there was no evidence that McDermott was a torturer. There was no evidence about John Burge. All that we had at the suppression hearing was the bare denials by four detectives that Ralph Harris was abused or tortured at Area 2. In light of what's come, what's been exposed over the last 20 years, it's a completely different story. It's a completely different case. And we think that justice requires that there be a new suppression hearing at which the finder of fact can consider not only the old evidence, not only the denials by the detectives, but all of the newly discovered evidence of what was actually happening at Area 2 and what Detective McDermott was actually involved in, and then consider all of that evidence when he gets on the stand and denies abusing Ralph Harris again. Counsel, does that end your argument? You've got a couple more minutes, if you'd like. A couple more minutes, Judge. And then we're going to have some more questions. Certainly. Let me move on to the issue that we raised in our supplemental brief, which is that in violation of the trial court's own in limine ruling at the evidentiary hearing, the trial court secretly considered the excluded testimony from Ralph Harris's trials in denying post-conviction relief. Prior to the PC hearing, the trial judge orally granted, in general, our motion in limine to exclude all of the trial testimony from Ralph Harris's trials. And to eliminate any doubt over the scope of that ruling, the parties later agreed on the record that it excluded all of the witnesses in the prosecution's witness list for the post-conviction evidentiary hearing. That hearing was litigated with the understanding that that evidence was excluded. But long after the post-conviction hearing ended, and while this appeal was pending, the trial judge revealed for the first time that he had considered the trial evidence in denying post-conviction relief, which took us completely by surprise. Typically, a violation of a motion in limine is committed openly by a party and is subject to objection. But here, the trial judge's secret consideration of that evidence left us with no opportunity to object, to impeach the testimony that the judge had considered, or point out the weaknesses in the state's case. We were ambushed, basically, by the court. Had we known that the trial court was considering that excluded testimony, we would have stressed all the contradictions and weaknesses in the state's case. But we had no opportunity to do that. In our first issue, we asked for a new suppression hearing. In this issue, we asked the court to remand for a new post-conviction hearing. In both instances, we asked that this be remanded to a different judge. Because Judge Porter has heard the testimony in this case 20 years ago, at three trials, and at the PC hearing, and he's always found that the police officers were credible, and Ralph Harris was not credible. We think that if this case goes back for either type of hearing, there needs to be a fresh start before a fact finder who isn't burdened with those findings, which, of course, it would be extremely difficult for any objective fact finder to overcome. So for all those reasons, we ask for the relief requested in this case. And I thank the court for their attention. Thank you, Mr. Hoffman. Justice Harris, any further questions? No, no, thank you. Justice Johnson, any questions? Not at this time. Counselor, thank you, Justice Johnson. Let me ask you, as I recall, the state made an assistance state's attorneys and medical people. What was the effect of that order of proof? And how do we consider that, Mr. Hoffman? Well, Judge Porter excluded all that evidence, as I said. So the state made an offer of proof. And it contained exactly what you said, a state's attorney, the medical tech at the jail, and also a detective who I believe conducted lineups. I don't think this court can consider that at all, because the state has not argued in this appeal that Judge Porter was wrong in ruling in his eliminate order excluding that testimony. So that issue really isn't before this court. The state has forfeited that issue. All right. Let me ask you, Mr. Hoffman, did the defendant make any confession to Officer Hamilton before there was any intrusion by any other officer? Justice Connors, that is a question to be decided at the new suppression hearing. I think it's premature now. And I think it's premature because a suppression hearing is a suppression hearing. I don't think this is a case where we can cut the baby in half and say, let's send it back to see about the confessions to the murderers and not the confession to the rape. And I think that's because if you look at the record, there isn't enough to really answer that question. Detective Hamilton and Bagdon, well, Hamilton testified, he and Bagdon talked to Mr. Harris when he arrived at Area 2 at 1.30 in the morning. And they had conversations about three sexual assault cases. Hamilton testified those conversations took place on and off for several hours. Now, during that time, Mr. Harris did confess to the RT rape, which is one of his confessions. But unlike the murder cases that Mr. Harris purportedly confessed to in this case, where there were handwritten statements signed by Mr. Harris and the time that those were made notated on the handwritten confessions. Unlike those confessions, Detective Hamilton testified he and Bagdon took absolutely no notes when Mr. Harris purportedly confessed to the rapes, nor did they write any general progress reports noting the time that Mr. Harris purportedly confessed to those rapes. And so we really don't know exactly what time that confession occurred. And I would also note that Detective McDermott and Boylan testified that they were at Area 2, they arrived back at Area 2 from the arrest, either at the time Mr. Harris arrived there or shortly after. They had plenty of time to abuse Mr. Harris before his purported confession to the rape of RT. And they both admitted in their testimony, they were alone with Mr. Harris in that interrogation room at least twice at Area 2. So I think I gave you the short answer and then the long answer. Short answer is, that's a question for the new suppression hearing, because the record is simply not sufficient to show when that occurred. Counsel, thank you. And are we ready for argument from the appellee? I am, you're ready. Your name and answer? Again, it's Lawrence Rosen from the Office of the Special Prosecutor here on behalf of the state. First of all, I want to start off by saying that we're not here to defend or argue against the pattern and practice that McDermott has. We've handled many of these cases. We know that there have been other allegations about McDermott and some of the things he did with Burge and without Burge. And so we're not here to defend that. As a matter of fact, if you look at the record, Judge Porter started off by saying that he recognized that there was significant pattern and practice concerning McDermott. He didn't contradict that at all. But as he pointed out, it didn't answer the question. And the reason why it didn't answer the ultimate question is Mr. Harris was obligated to show that McDermott was actually involved in his interrogation. In other words, you have to connect the person who's accused with the pattern of practice of actual interrogation. The fact that he had pattern of practice alone doesn't mean that Mr. Harris prevails on his PC. And if you look at the facts, Your Honor, the facts are that McDermott, based on the evidence of Detective Hammond testifying, Detective Boylan testifying, Detective Bagdon testifying, none of which had any pattern of of the intake individual at the lockup, which who testified, by the way, that Mr. Harris never complained about any bruises or any beating whatsoever. And if you take into consideration the testimony of the med tech at Cook County Jail, where they do a physical examination of the individual when he's being sent there to be locked up. And they also ask the individual questions about his health at that particular time, which was one day, about a day and a half after his arrest. He never told that individual that he'd been beaten. He never told the individual that he'd been struck, of course, or anything of the sort. And when asked by the med tech of what his physical condition is, the only thing he mentioned was that he had three months earlier, he'd been shot, apparently during some sort of a confrontation, and never complained about any other abuse, especially never complained about any abuse that he during his time at area two when he was arrested on August of 1995. Can I ask you, didn't both your Titus and McDermott spend some alone time with the defendant? Well, for a brief period of time, Your Honor, and let me explain what happened. I was going to get into that. When Ralph Harris was arrested, he was taken to area two, and he was placed in a room. And the only two detectives in that room at that time were Detective Hamilton and Detective Bagdon. You asked the question about whether there was anything said by Harris to implicate him in the crimes. And during this time period, and I believe it was between 1.30 a.m. and three o'clock a.m., there was some discussion about the three sexual assaults and the R.T. assault. And then at that point in time, there was a discussion about taking his confession. They started though, having lineups, lining up people about some of the crimes he confessed to and some of the other crimes that they thought he was involved in, which and those lineups occurred at about 7 a.m. Okay. Okay. Well, counsel, I don't want to go through the whole thing. This is this a lot of information here, but was there alone time? Yes. And with McDermott? Yeah, but this is how it occurred. And it was a very brief period of time. Harris got back from his confession, excuse me, his lineup at about 9 a.m. At that point, Mr. Harris said that he was involved in a robbery involving an individual named Mr. Brown. And Detectives McDermott and Detective Boylan were involved with that particular investigation. And so Hamilton went in and told them about that. They went in for a couple of minutes. Harris gave them some information and they immediately went out to get a warrant concerning the information they were given. Okay. And Harris, it's a short period of time, went back to the lineup. Okay. And so supposedly after he was beaten in the face, beaten in the chest, guns to his head and whatever, he immediately went back into a lineup and people were there. And at no point in time did he complain about being beaten or hurt or anything of the sort. Furthermore, your honor, during the time period of 1.30 a.m. and 7 o'clock a.m. and Harris testified that this is when he was supposedly beat. Those two officers, McDermott and Boylan, had taken Ms. Clark, who was also brought in at the same time Mr. Harris brought in, and they were dealing with her. Okay. So he said he got, Harris said he immediately got beaten by McDermott and Boylan between the hours of 1.00 and 7.00 a.m. But the facts show to the contrary. First of all, it shows that the two detectives were involved with Ms. Clark at the time. It also shows that Hamilton was involved with him at the time and then he went into lineups. Okay. So yes, there was a brief period of time when Boylan and McDermott were with him and I'm not denying that was, but it was certainly not, totally contradicts Ralph Harris's testimony that those two individuals were with him for hours and continually beat him and put a gun to his head and hit him with the fist or whatever of the sort. That just didn't happen. Right. So there was a brief period of time and what they said they did and what Hamilton said they did and what everyone else said they did during this time period totally contradicts Harris's testimony that during this three or four hours they were in there beating him. Okay. I don't know if that answered your question. Maybe there's more information, but that's the entire point that the key thing that Judge Porter found in all this, and I can keep going over the facts, was that Ralph Harris never made the connection between McDermott and Mr. Harris. Okay. Now, but I wanted to touch on two others and I can go on about what happened in the Cook County jail. You know, furthermore, Ms. Clark testified that Ralph Harris never complained to her about being beaten. That was his girlfriend. In fact, I think he was engaged to her at some point. That would be extremely unusual, almost impossible that he would not have mentioned that to her, but he didn't. Now, I wanted to touch on two things that my opponent said, Your Honor. I wanted to touch on the standard of review here. Okay. He says it's deniable because he claims that the only decision that Mr. Porter made was, Judge Porter, excuse me, was made on documents. And, you know, I know that there's case law that says if a trial judge just relies on documents in making his decision, the appellate court doesn't defer to him because he's not judging the credibility of the witnesses and so on and so forth. But this was a blended case, Your Honor, because Judge Porter, from the very beginning of this case, he was the trial judge. So, and in one of the trials, I think, I believe the RT trial, Ralph Harris actually testified. This judge saw Mr. Harris testify at the RT trial. He saw all of the detectives and so on testifying during the suppression hearing. He saw the attorneys testifying, and I mean the assistant state's attorneys who took statements. He saw them testifying both at the trial and during the suppression hearings. And so when he made his decision, Your Honor, he took this all into consideration. And as a matter of fact, the law specifically provides that when a person files a PC, it goes back to the court that originally had his case. Now, this was an unusual situation, I have to admit, because most of the time when we have these PCs, even though it goes back to the original court, more often than not, those judges have retired or they've gone on to a different life. But with Judge Porter, this didn't happen, Your Honor. And maybe that was unfortunate for Mr. Harris, but the fact of the to judge the credibility of all the critical witnesses that took the stand to talk about the confession, Your Honor. Furthermore, Your Honor, one last point. My understanding of the order that Judge Porter entered was that he wasn't allowed trial evidence to the extent that it went to the proof or the guilt of the particular defendant here, which was Mr. Harris. And that's correct. But what he also said was that any of that prior testimony, trial record, trial transcripts that rebutted the newly discovered evidence would come in. And so my understanding is, is that the evidence that Judge Porter considered was all the prior trial court record that rebutted the new evidence that Mr. Harris presented during the PC hearing, Your Honor. And actually, if you look at the statute itself, and I want to quote it, 725 ILCS 5122-2.1C, it says in considering a petition pursuant to this section, the court may examine the court file or of the proceeding in which the petitioner was convicted, okay? And any action that the appellate court might have taken. So when Judge Porter went back to the trial court record to look at prior information concerning the suppression, the statute gives him that specific right. So there was no violation of any motion eliminated. And there was nothing what this judge supposedly, excuse me, I talk too fast sometimes. There was nothing this judge did improper by going back to the prior trial court record to see what as newly discovered evidence in his post conviction case, Your Honor. Thank you. Are you finished with your argument, counsel? Basically, I mean, I can go into all the other facts that show that Mr. Harris just his account of what happened is just basically impossible. There's just no way it could have happened. And that was the basis of Judge Porter's ruling. It wasn't that he didn't think that but fact of the matter is was Hamilton to done all the interrogation, he had no pattern of practice at all. And at no point did Ralph Harris accused Hamilton of beating him at all, Your Honor, or using any other force or coercion to get his confession. All right. Thank you so much, Mr. Rosen. And Justice Harris, any questions? No, thank you. Justice Harris. Counsel, let me ask you the offer of proof that possibly could have rebutted that there was no injury visible, but would it rebut that there was no injury given to the defendant? At the trial at the RT trial, Your Honor. That's the first time and I could be wrong, but I went over the transcript. And but that was the my first understanding of when Ralph Harris got on the stand to testify about any abuse, because he didn't take in to stand on any of his suppression here, if Your Honor, he didn't testify at all. And my understanding is, is that when he got on the stand and talked about what McDermott did to him, supposedly did to him, there was evidence that came in that that mark he had on the left temple was was during his arrest. And I think there was actually a picture that was introduced at that trial that showed it was a little mark. And I also believe that the trial record shows that they looked at it and they noted that the only physical mark on him whatsoever, when this picture was taken, was that little mark on his left side, which everyone other than Mr. Harris explained as occurring at the arrest. And I think you mentioned it, but it's showing a pattern and practice alone. That's not sufficient to prove coercion. No, because you have to, you have to connect it to the particular defendant. I mean, think about it, Your Honor. If all of these cases, and our office has handled quite a few, just said, all you have to do is show that an individual who had some part of the case was involved in pattern and practice, then you'll succeed on your PC. Well, I've had a lot of cases Your Honor, where Detective Burge was one of the names on the police reports because he was the commander of Area 2 at that particular time. But he had, that was it. That's just his name and he had no involvement. Okay. And there are cases that say that not only you have to show that there was a pattern and practice, but you have to connect it with the very case at issue at the time. Okay. Thank you so much, Mr. Rogen. And do you wish to offer some final words, Mr. Hoffman? You've got 10 minutes. Yes. Thank you, Justice Connors. Well, the scope of the order in limine is extensively discussed in our briefs. And uh, I have to say that, uh, we went out of our way to define the scope of the in limine order. Uh, as you'll see in our supplemental brief, uh, after the Judge Porter gave generally, uh, ruled in our favor on the motion to eliminate, we sent an email to the special prosecutor's it excludes all of the trial testimony of all of the prosecution witnesses. And we got no response to our email. So when we went to court at the next court date, we put the email in the record, uh, before Judge Porter, we expressed our view that it excluded all of the trial testimony of all of the witnesses in the state's list of witnesses and a special prosecutor O'Rourke agreed on the record. Yes. And the reason the state submitted an offer of proof, uh, that they claimed rebutted our testimony is because that testimony was excluded. You don't submit an offer of proof. If something is already in evidence, an offer of proof is made so that this reviewing court can decide whether or not that evidence was properly excluded. So, uh, it's clear from this record that all of the trial testimony was excluded. And as a matter of fact, in people versus weathers, this court explicitly held that where the issue is a coerced confession, a physically coerced confession, other than the defendant's confession, the trial testimony is irrelevant. And we cited weathers, uh, which I think makes respect fully makes about 90% of what Mr Rosen just argued based on things that are not on the record below in this case and should not be considered by this court. Um, as for de novo review, uh, it's true. Judge Porter heard these witnesses. He made credibility determines 20 he credited the testimony of the police officers and rejected the allegations in Ralph Harris's motion to suppress. But again, that was without the benefit of this newly discovered evidence. And it was 20 years ago. Um, I personally don't know how many of your honors have been trial judges, but I think it would be a great challenge, uh, 20 years later to recall how and why you credited the testimony of certain witnesses. Uh, it's inconceivable that even the most conscientious judge could recall their subjective determinations on the demeanor and credibility of witnesses 20 Porter saw at our PC evidentiary hearing were transcripts. Uh, and most of what Judge Porter heard back in the day 20 years ago still was excluded. All the trial evidence was excluded. Doesn't matter that Judge Porter heard it 20 years ago, uh, and decided to credit the testimony of the police officers. It's a new day here. Uh, this court can decide this de novo. But again, as we expressed in our briefs, even if you defer to Judge Porter's findings, uh, even if you, uh, believe that as a fact finder, his rulings are entitled to deference. I think strongly we still met our burden. Uh, Judge Porter's finding was simply against the manifest weight of the evidence. The weight of the evidence is everything I described in my opening argument here. All of the evidence we put on about the area to torture scandal and McDermott's involvement. And contrary to what, uh, Mr Rosen said, there's no, uh, unrelatedness between our, this isn't where Burge is named and had nothing to do with the case. Ralph Harris named Detective Michael McDermott as one of his abusers, one of his torturers. We've shown that McDermott is subject to more impeachment than any other area to officer that we've ever seen. There is a direct correlation between our newly discovered evidence and the that McDermott had minimal contacts, uh, spent very little time. In fact, uh, not enough time to have abused, uh, your client. Well, again, if you look at the, uh, Justice Johnson, if you look at the testimony at the motion to suppress, not the testimony of trial, which was excluded, but even if you look at the testimony of trial, uh, how long does it take to punch a person in the stomach and ribs, hit them with a telephone book, jam a gun into their head and their mouth and tell them they could be killed? Uh, and nobody, uh, would blame the police officers, even if they only had five minutes with Mr. Harris, uh, that would be enough time for the abuse in this case. Uh, this wasn't an extensive hours long days torture, uh, as we've seen in area two cases like the Andrew Wilson case. And they admitted Boylan and McDermott admitted they were alone with Mr. Harris at least twice at area two in that interrogation room. Uh, again, uh, as I answered justice Connors in her quest question, uh, how long they spent in that suppression hearing where all of these issues can be the subject of what happened when it happened and how it happened. Uh, and, and, and to go back, uh, to whether this is de novo or deferral, uh, in further answer to justice Harris's original question, uh, what did judge Porter base his Well, here's a couple other things judge Porter found in rejecting our case, that this was a heater case. And for that reason, the police wouldn't do anything wrong. You know, they wouldn't dare do anything wrong in a heater case. Well, uh, that is simply not true. If you look at the most notorious heater case in the last half century in Chicago, that was, uh, the murders of police officers, Fahey and O'Brien back in 1982. The, that didn't prevent area two detectives from torturing Andrew Wilson and Jackie Wilson, uh, in that investigation. So torture did happen in heater cases. Uh, this court has found that torture did happen in heater cases. Uh, judge Porter also found that the abuse occurred, or that the alleged abuse in Ralph Harris's case took place two years after Burge was fired. So judge Porter thought that somehow the torture in area two magically stopped when, when, uh, commander Burge was fired. But we know that's not true. We put in evidence that there were a number of persons who complained to the Illinois torture and inquiry commission that they were abused by area two detectives long after Burge had left. And in fact, two of those complaints involved detective McDermott, uh, as recently as 2003. So in his ruling, in his factual findings, judge Porter relied on speculation about heater cases. He ignored evidence that people were actually abused and tortured after Burge was fired. And so we think, uh, that, uh, if this court doesn't apply DeNovo review, that even if you defer to judge Porter's findings, uh, most of them were against the manifest way to the evidence or purely based on speculation. And just the, uh, finding that the, um, statement regarding the RT rape occurred prior to the time of the alleged abuse. Okay. I, I tried to answer that question earlier, justice Johnson. Uh, let me give it another stab. Uh, there's no, nothing in writing, no memorialization of when the, uh, confession occurred. Uh, Hamilton and Boylan took tone note, no notes. They wrote no reports. Hamilton said they talked about the rape cases on and off for several hours. McDermott and Boylan admitted they were an area too shortly after Ralph Harris arrived there. Uh, there are so many gaps in the state's case that it is impossible to tell from this record, uh, whether or not the alleged abuse occurred before or after Ralph Harris purportedly confessed to, uh, raping RT. And what's interesting justice Johnson, as I mentioned before, um, we now know what happened area too. We know that there were tortured and coerced confessions, uh, to crimes. And what's interesting is in the murder cases, there were handwritten statements with the notation of what time they were made, uh, which were memorialized and in the police file and in discovery. Uh, is after Ralph Harris filed his motion to suppress at the hearing, uh, for the first time the D the detectives had to testify about what happened. And it was only then that they claimed that the confession to RT happened very soon. So, uh, that needs to be discussed too. And although detective Hamilton had no history of abuse, he was an area to detective. We know that there was the code of silence. We know that detectives covered for each other was Hamilton covering for McDermott and Boylan. We don't know. The only way to find out is to have a new suppression hearing at which all of this evidence can come out. Um, we're at the end of your time council. May I conclude briefly? You may briefly. Thank you. Uh, we think that Ralph Harris is entitled to a new suppression hearing, not only because we met our burden, but because there's a stain on the Cook County criminal justice system, a stain of the area to torture scandal that can only be cleared. If the people of Cook County are confident that when there's a suppression hearing alleging that a person was tortured, the only way that that can be meaningfully decided is if the fact finder hears all of the evidence, both the old evidence and the new evidence of the regime of torture and the effect it had on a particular defendant's case. And for that reason, we're asked this court to remand this case for a new suppression hearing at which all the elements can, all the evidence can be presented to the fact finder and a finding can be made, uh, in, in the proper context. And we thank the court for its time. Thank you, Mr. Hoffman. Any other questions, fellow justices? No, I have one for attorney Rosen. All right. Um, counsel, you, you indicated that Mr. Harris did not tell, um, Ms. Clark of any abuse. Um, however, I thought I read that at no point was she able to speak to or see Mr. Harris, uh, while at the police station. Is that correct? No, that's, that's not correct. Your honor, as a matter of fact, um, there was a time period that they did see each other. And I think the record reflects that. Furthermore, your honor, uh, she testified in one of these suppression hearings and never testified that Harris told her about any, uh, abuse at all. Um, nor did the other individual who was Mr. Brunt, who was a co-defendant in two of the murders that Mr. Harris was involved in. Uh, he never testified, came to testify to say that Harris was tortured. I want to add one thing, your honor, you asked a question about, uh, whether there was a confession about the, the sexual assaults and so on, uh, before, uh, which was the first confessions made, um, when those, uh, as we had said before, uh, when Mr. Harris told, um, Detective Hamilton about the three sexual assaults and the RT assault, they began a, a, uh, uh, lineup almost immediately. They started going out and rounding up witnesses, uh, uh, to, uh, to identify Mr. Harris. So between the times of 1.30 AM and seven o'clock AM, there was a confession about, or at least a statement in, uh, implicating him in those particular crimes, because based on that information, they went out and executed some warrants and they started gathering up witnesses. So respectfully, when, uh, Mr., uh, my opponent, Mr. Hoffman says that there's no evidence that, that, that those statements took place to Mr. Hamilton in the early morning of, uh, August, uh, 29th, there's plenty of evidence that, that, that those confessions took place at that particular time. And that, that's what led to all the follow-up that occurred after the fact. And then at 9 AM was when, uh, uh, Mr. Harris first mentioned the Brown, uh, case, which was a robbery case. That was the time period that, that, uh, the Detective Hamilton said to Detective McDermott, you may want to talk to him briefly about this because you're involved in that investigation. And immediately after that conversation, they went out and started getting warrants and lining up people about that particular crime. And furthermore, Mr. Harris didn't testify that his assault by McDermott took place within a few minutes or whatever. His testimony was it occurred for hours on three different occasions. So with respect to what Mr. Hoffman said, well, it could happen in a brief period of time, but Mr. Harris never said that. He said just the opposite. It was an extended hours worth of beatings threats and so on and so forth. Okay. So that, and that story itself is incredible. Um, lastly, wouldn't you agree that any participation by Mr. McDermott would, uh, tank the entire process? No, not a bit. And I'll explain why you're on it. Um, it was not enough connection that he was the actual questioner and there are other appellate court cases that we've cited that merely being part of the investigation itself. And that, and let's assume that individual has pattern and practice is enough to make the connection of the pattern and practice to the particular case. And it's what I said earlier. And it's what judge Porter said. The fact that he wasn't vowed, but didn't do the interrogation means that Mr. Harris hasn't met his bird. He hasn't made out that he deserves any under the PC. And by the way, judge Porter never said that McDermott wasn't lying. And, uh, judge Porter never said after all this other evidence came in that McDermott never abused any people. He said that from the very beginning, he went through the three or four different instances where McDermott was accused of, of, uh, physical coercion towards defendants and so on. And, uh, and he talked about the, the Turk findings and the Egan report and all the other reports that came out that basically established that the bad things they said about burgeoned people under him did happen. And then he went on to comment, but that doesn't mean that Harris has established his case. He's got to make the connection. And that's what happened here. Harris never made that connection between McDermott or Boylan in terms of his interrogation. The only one that was involved from Mr. Hamilton and Mr. Baggin, none of whom had any pattern in practice. And, uh, Hamilton became a detective one year, uh, before 1995 and Burge was gone by then. So he never worked under Burge at all, your honor. I may have gone more than you wanted your honor. I said what I said. With all respect, I feel like, uh, Mr. Rosen went beyond the question and I feel like I'd like 30 seconds of syrup council 30 seconds. It is I'm timing you go. All right. Uh, Mr. Rosen, uh, said that McDermott wasn't the questioner. We cited people versus Rogers from the Illinois Supreme court 50 years ago, which held that the abuser doesn't need to be the and that's what allows the course confession. Thank you, sir. Well, gentlemen, I'll tell you both. It was an excellent presentation here today. Very well done. Excellent presentation. Do you vote? And I must say that I love both of your artwork as well. So I want to say, because I don't know when I'm going to say, see Mr. Hoffman again that I thought he did a good job and I want to commend him for doing a good job. Well, that's very civil. I love hearing civil, but you all gentlemen. Thank you. You'll be hearing from us. Thank you very much. Thank you.